**M.J.R. CORPORATION and Western Lloyds Insurance Company, Appellants,**

v.

**SCOTTSDALE INSURANCE COMPANY, Appellee.**

No. 05–90–00578–CV.

Court of Appeals of Texas, Dallas.

Jan. 9, 1991.

R. Wayne Gordon and Robert G. Hogue, Touchstone, Bernays, Johnston, Beal & Smith, Dallas, for appellants.

Stephen L. Holley, Dallas, for appellee.

Before ENOCH C.J., and WHITHAM and LAGARDE, JJ.

## OPINION

WHITHAM, Justice.

In this liability insurance coverage case, appellants, M.J.R. Corporation and Western Lloyds Insurance Company, appeal from a take-nothing summary judgment in favor of appellee, Scottsdale Insurance Company. In three related points of error, M.J.R. and Western Lloyds contend that the trial court erred (1) in denying their motion for summary judgment on the coverage issue, (2) in granting Scottsdale Insurance's motion for summary judgment, and (3) in rendering judgment that M.J.R. and Western Lloyds take nothing. We agree. Accordingly, we reverse and render in part and reverse and remand in part.

The parties stipulated the facts and the facts are undisputed. Arlen Ray Jacobs was injured in a fight that occurred at "M.J.R.'s Fare of Dallas, Inc.," a night club in part owned by M.J.R. Jacobs filed suit against M.J.R. and others. In that underlying action, the trial court found that Jacobs was injured in an accident, that the accident resulted in injuries to Jacobs, that M.J.R. was negligent and a proximate cause of Jacobs' damages, and that Jacobs' damages were in the amount of $12,000.00. Both Western Lloyds and Scottsdale Insurance had issued an insurance policy to M.J.R. Both policies contained "first-party" property coverage. The policies also contained liability coverage applicable to "third-party" claims. Within the liability coverage, each policy contained two insuring endorsements. The first, a "TXCMP–200" endorsement, provided that

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises and the Company shall have the right and duty to defend any suit against the insured seeking

damages on account of such bodily injury or property damage....

The policies' TXCMP–200 endorsements each contained an "exclusion (g)" which provided coverage would not apply

(g) to bodily injury or property damage arising out of operations on or from premises (other than insured premises) owned by, rented to or controlled by the named insured....

The policies' second liability coverage was a TXCMP–202 "Comprehensive General Liability Insurance Endorsement." The TXCMP–202 endorsement provided:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage....

Neither Scottsdale Insurance's nor Western Lloyds' TXCMP–202 endorsement contained an exclusion restricting the endorsement's coverage to any particular premises.

Western Lloyds was notified that M.J.R. had been sued in the underlying case, and Western Lloyds assumed M.J.R.'s defense. Scottsdale Insurance was also notified, and likewise was asked to defend M.J.R. Scottsdale Insurance refused. Western Lloyds and M.J.R. satisfied the $12,000.00 judgment rendered against M.J.R. in the underlying cause. Scottsdale Insurance declined to contribute any funds toward satisfying the judgment. M.J.R. and Western Lloyds incurred $5,000.00 in defense fees in the underlying case. Scottsdale Insurance refused to contribute any funds toward payment of these defense costs. M.J.R. and Western Lloyds sued Scottsdale Insurance in the present case, and alleged that Scottsdale Insurance was in breach of its insurance contract with M.J.R., negligent, in bad faith, and in violation of the Texas Deceptive Trade Practices Act and the Texas Insurance Code. M.J.R. and Western Lloyds alleged that Scottsdale Insurance was a co-insurer of M.J.R., and

should have participated in M.J.R.'s defense and contributed equally to satisfaction of the underlying judgment.

Based upon amended stipulations filed in the trial court, M.J.R. and Western Lloyds moved for summary judgment on the coverage issue, and argued that the TXCMP–202 endorsement as a matter of law obligated Scottsdale Insurance to provide M.J.R. with defense and indemnity benefits on the underlying case. M.J.R. and Western Lloyds argued that they were entitled as a matter of law to one-half of the amount of the judgment in the underlying case, one-half of the attorney's fees in the underlying case, and attorney's fees expended in bringing the present action. Scottsdale Insurance responded to M.J.R. and Western Lloyds' motion for summary judgment, and cross-moved for summary judgment on its own behalf. Scottsdale Insurance argued that the TXCMP–200 endorsement, which was premises-restrictive, controlled over the TXCMP–202 endorsement.

The dispute centers on "designated premises." Western Lloyds insured M.J.R. Corporation d/b/a Baby Dolls Lounge, with a designated premises at 3700 Highway 157, Fort Worth, Texas. Scottsdale Insurance insured M.J.R. Corporation d/b/a Geno's Lounge, with a designated premises at 8014 Harry Hines Boulevard, Dallas, Texas. The injuries to Arlen Ray Jacobs occurred at The Fare Club, located at 5030 Greenville Avenue, Dallas, Texas. The parties agree that the endorsement to Scottsdale Insurance's policy, TXCMP–200, is restricted to specific premises which are not the premises where this accident occurred and therefore it provides no coverage for the payment of M.J.R.'s negligent acts. Thus, the dispute focuses upon the endorsement to Scottsdale Insurance's policy, TXCMP–202. Scottsdale Insurance maintains that the coverage provided under its endorsement, TXCMP–202, does not extend the coverage to compensate for M.J. R.'s negligent acts at *its Greenville Avenue* location (The Fare). Scottsdale Insur-

ance advances five reasons this endorsement does not extend the coverage.

(1) The insured listed on Scottsdale Insurance's policy is M.J.R. Corporation d/b/a Geno's Lounge, 2332 Irving Blvd., Dallas, Texas.

(2) Scottsdale Insurance's policy contains the following limitation in Endorsement No. TXMP–22:

Location of premises, as stated in the Declarations, is extended to include the following and insurance is provided with respect to those premises described below and with respect to those coverages and kinds of property for which a specific limit of liability is shown subject to all the terms of this policy, including forms and endorsements made a part hereof;

LOCATION OF PREMISES

(*Address, City, State*)

8014 Harry Hines Blvd.

Dallas, Texas

(3) Scottsdale Insurance's policy has attached to it endorsements No. 01 and 04 referring to the insured as "DBA Geno's Lounge" (not The Fare).

(4) The insuring clause in Scottsdale Insurance's TXCMP–202, states:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage *to which this insurance applies....* (emphasis added by Scottsdale Insurance).

(5) Scottsdale Insurance's endorsement TXCMP–202 provides for the following exclusions:

This insurance does not apply:

(p) to bodily injury or property damage for which insurance is afforded under:

(1) the TMP Liability Insurance Coverage, or

(2) Any Comprehensive Personal Liability Endorsement forming a part of this policy....

Therefore, Scottsdale Insurance reasons that the loss occurred at "The Fare" on Greenville Avenue, and that nowhere in Scottsdale Insurance's policy is any such location insured; instead Geno's Lounge on Irving Boulevard is the insured premises extended by endorsement TXMP–22 to "8014 Harry Hines, Dallas, Texas." Based on this reasoning, Scottsdale Insurance argues that the basic insuring clause in Endorsement TXCMP–202 by its definition does not provide the coverage requested by M.J.R. and Western Lloyds. In this connection, Scottsdale Insurance points to language specifically prefacing payment for damage "to which this insurance applies." Scottsdale Insurance insists that this insurance does not apply to every possible location in the world where the insured did or could have done business, asserting that such an argument would allow the insured to pay one premium for one location and then open an infinite number of other locations and claim coverage for all such premises under TXCMP–202. Additionally, Scottsdale Insurance contends that the exclusion in subparagraph (p) found in TXCMP–202 prevents coverage under this endorsement and that insurance is afforded under TXCMP–200, which limits TXCMP–202's application.

■ With this background, we turn to a discussion of other matters shown on the face of the Scottsdale Insurance policy indicated at the top of the policy to be a "Special Multi–Peril Policy." Item 5. of the policy has two sections: section I provides for property coverage; section II provides for liability coverage. Thus, the Scottsdale Insurance policy (as did the Western Lloyds policy) afforded two different coverages: property coverage for the "Geno's Lounge" located at 8014 Harry Hines Blvd., Dallas, Texas, and liability coverage. The issue is whether the liability coverage is premises-restrictive. At this point, it is important to note that the Scottsdale Insurance policy endorsement TXMP–22 is shown under Section I "property coverage" to apply only to the section I property coverage. However, when we read further down the Scottsdale Insurance policy form we reach Item 6. Item 6. iden-

tifies for the reader the forms and endorsements only applying to the various coverages. We learn from Item 6.a. applicable to Section I that TXMP–22 is a part of Section I property coverage only. TXMP–22 is not made a part of Section II liability coverage under Item 6.b. which applies to Section II. Instead, Item 6.b. applicable to Section II liability coverage tells us that TXCMP–200 and TXCMP–202 are both applicable to Section II liability coverage.

Therefore, we take a closer look at TXCMP–200 and TXCMP–202. First, we look at TXCMP–200. The TXCMP–200 endorsement obligated Scottsdale Insurance to pay on behalf of M.J.R. "all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance, or use of the insured premises...." The TXCMP–200 endorsement also contained exclusion (g), which provided that the insurance did not apply to bodily injury or property damage "arising out of operations on or from premises (other than insured premises) owned by, rented to, or controlled by the named insured...." We conclude, therefore, that the TXCMP–200 endorsement restricted liability coverage to the Geno's Lounge premises specified under the policy's property coverage (8014 Harry Hines Blvd., Dallas, Texas; not "The Fare" located at 5030 Greenville Avenue, Dallas, Texas.).

Second, we look at TXCMP–202. Different from TXCMP–200, TXCMP–202 states that it is issued in consideration of the payment of the premium and is described as a "comprehensive general liability insurance endorsement." The TXCMP–202 endorsement states that Scottsdale Insurance would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence...." We note that the TXCMP–202 endorsement does not contain any exclusion restricting the coverage to any particular premises. Nevertheless, Scottsdale Insurance argues that its policy specified

"Geno's Lounge" as the "covered premises," and that therefore the policy's coverage as a whole was limited to the Geno's Lounge premises. We disagree. We do so because the specific references to "Geno's Lounge" in the Scottsdale Insurance apply only to the policy's first-party property coverage, and not to the policy's TXCMP–202 liability insurance endorsement. We conclude that the Scottsdale Insurance TXCMP–202 endorsement provided comprehensive general liability coverage, and was in no way restricted to particular premises. Indeed, the endorsement's insuring language cannot be read to be premises-restrictive, and there is no exclusion in the endorsement which even arguably renders the coverage premises-restrictive.

▬▬▬ Given our views on Scottsdale Insurance's policy endorsement TXCMP–202, we turn then to disposition of the present case. It is undisputed that M.J.R. asked Scottsdale Insurance to defend it under the policy generally, and the policy contained the TXCMP–202 endorsement. Each coverage provision of each policy, along with its respective definitions and exclusions, must be read as separate and distinct. *Triple U Enterprises, Inc. v. New Hampshire Ins. Co.,* 576 F.Supp. 798, 810 (D.N.D.1983), *aff'd in relevant part,* 766 F.2d 1278, 1279 (8th Cir.1985). *See St. Paul Fire & Marine Ins. Co. v. Three "D" Sales, Inc.,* 518 F.Supp. 305, 310–11 (D.N.D.1981). Although an attachment to an insurance policy upon a separate sheet of paper and the policy are to be construed together, and as one, it by no means follows that they constitute an indivisible contract. *See Southland Life Ins. Co. v. Johnston,* 97 S.W.2d 518, 518–19 (Tex.Civ.App.—Amarillo 1936, writ ref'd). They are in fact two distinct contemporaneous contracts. *Johnston,* 97 S.W.2d at 518–19. Thus, the language of one of the contracts cannot be used to preclude the application of coverage under the other. *See Johnston,* 97 S.W.2d at 519. The law is well settled that in all insurance contracts, same will be most strongly construed against the insurance company. *Johnston,* 97 S.W.2d at 519. It is a cardinal rule, in construing insurance contracts,

that one must look to the entire contract and be governed by all its provisions and if by looking at all of the provisions thereof, a reasonable and just construction can be placed thereon without any ambiguity or uncertainty, same will prevail. *Johnston,* 97 S.W.2d at 519. Even in resolving ambiguity in an insurance policy the Texas courts must be guided by the following principles: (a) an insurance policy will be construed strictly against the insurer, (b) when its terms reasonably admit of two constructions, the one permitting recovery will be given, and (c) consistent with fairness, a meaning will be given to its language that effectuates a contract of insurance rather than defeats it. *See Meadows & Walker Drilling Co. v. Pacific Employers Indemnity Co.,* 324 F.Supp. 282, 286–87 (S.D.Tex.1971). In the present case, we have before us Scottsdale Insurance's policy Section II liability coverage which contains two separate insuring endorsements. The TXCMP–200 endorsement was premises-restrictive, and contained a specific exclusion limiting coverage to certain premises. On the other hand, the policy's TXCMP–202 endorsement was *not* premises-restrictive, and simply provided that Scottsdale Insurance would pay on behalf of the insured all damages which the insured became legally obligated to pay for bodily injury or property damages arising from an occurrence. It is undisputed that Jacobs was injured (thus satisfying the "bodily injury" provision of the endorsement), and that Jacob's injuries were the result of an accident caused by M.J.R.'s negligence (thus establishing the "occurrence" requirement of the endorsement). Scottsdale Insurance was duly notified and asked to fulfill its defense and indemnity obligations to M.J.R. under the endorsement, but refused to do so. We conclude that in the present case the TXCMP–202

endorsement by its insuring language provides coverage for the underlying suit. We conclude further that the TXCMP–200 endorsement by its insuring language does not provide coverage for the underlying suit. Consequently, we adopt the construction of the Scottsdale Insurance policy favoring the insured, M.J.R. and in favor of coverage. Thus, we ignore the TXCMP–200 endorsement. It follows that M.J.R. and Western Lloyds should have judgment against Scottsdale Insurance on the coverage issue in the amount of $8,500.00 representing Scottsdale Insurance's fifty (50%) percent obligation as co-insurer with respect to the $12,000.00 judgment rendered against M.J.R. in the underlying action and Scottsdale Insurance's fifty (50%) percent obligation with respect to the $5,000.00 in defense costs incurred in the underlying action. We sustain M.J.R. and Western Lloyds' three points of error.

We reverse the trial court's judgment. We render judgment in favor of M.J.R. and Western Lloyds and against Scottsdale Insurance in the sum of $8,500.00 together with interest thereon at the rate of ten percent from February 2, 1990, the date of the trial court's judgment.[1] We remand the remainder of the case to the trial court for trial on the negligence, bad faith, breach of fiduciary duty and statutory causes of action, and for determination of attorney's fees for trial and appeal on the Scottsdale Insurance policy coverage issue.[2]

1. Computation of judgment rate by the consumer credit commissioner for month of February, 1990, 15 Tex.Reg. 459 (1990), pursuant to TEX. REV.CIV.STAT.ANN. art. 5069–1.05, § 2 (Vernon Supp.1990). The contents of the Texas Register are to be judicially noticed and constitute prima facie evidence of the text of the documents published in the Register and of the fact that they are in effect on and after the date of the

notation. TEX REV.CIV.STAT.ANN. art. 6252–13a, § 4(c) (Vernon Supp.1990).

2. Although M.J.R. and Western Lloyds would have us render judgment for trial attorney's fees based on summary judgment affidavit, we decline to do so. That fact determination is for the trial court. We are not fact finders.