# IN THE SUPREME COURT OF TEXAS

════════════
No. 15-0452
════════════

IN RE NATIONAL LLOYDS INSURANCE COMPANY, RELATOR

════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
════════════════════════════════════════════

**PER CURIAM**

In this mandamus action, National Lloyds Insurance Company contends that the respondent judge abused her discretion by ordering National Lloyds to produce "all emails, reports attached to emails, and any follow-up correspondence and information" and by sanctioning National Lloyds for refusing to produce certain information. We hold that the production order is overbroad, and we therefore conditionally grant mandamus relief.

The real parties in interest (referred to here as Plaintiffs) own insurance policies with National Lloyds. Beginning in 2013, Plaintiffs began filing independent lawsuits against National Lloyds, claiming they were underpaid on claims following two hail storms that struck Hidalgo County on March 29 and April 20, 2012. Plaintiffs alleged violations of the Texas Insurance Code, fraud, conspiracy, breach of contract, and breach of the duty of good faith and fair dealing. On April 10, 2013, the Multidistrict Litigation Panel of Texas (MDL Panel) granted the motions of two other insurance carriers seeking to transfer certain cases arising out of the March and April 2012 Hidalgo County hail storms to a pretrial court. *See* TEX. R. JUD. ADMIN. 13.3, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. F app. The MDL Panel appointed the 206th District Court, the respondent in this

proceeding, as the pretrial court. *See id.* 13.5, 13.6. On September 13, 2013, the MDL Panel transferred additional cases arising out of the same two storms, including those brought by Plaintiffs against National Lloyds, to the same pretrial court. *In re Nat'l Lloyds Ins. Co. Hurricane Litig.*, 422 S.W.3d 926, 932 (Tex. M.D.L. Panel 2013).

Preceding the National Lloyds transfer, the pretrial court appointed a discovery special master to assist in its review of discovery disputes. *See* TEX. R. CIV. P. 171. On January 14, 2014, the pretrial court adopted a revised master discovery plan approved by the special master. The plan included a single set of institutional discovery requests directed to each insurer, including National Lloyds. On March 11, 2014, Plaintiffs served National Lloyds with requests for production, which National Lloyds responded and objected to on April 25, 2014. The relevant requests stated:

12. All documents regarding the generalized assessment, review, evaluation and/or summary of Defendant's handling of claims arising out of the Hidalgo County hail storms occurring on or about March 29, 2012 and/or April 20, 2012.

13. Any document general in nature which applies to more than one claim created, gathered, or reviewed by Defendant relating to Hidalgo County hail storm claims occurring on or about March 29, 2012 and/or April 20, 2012, including any analysis of the total amount paid on claims, time open, responsiveness, compliance with company policies and procedures, compliance with the Texas Insurance Code, the number of reopened claims, the reason for reopening the claim, and the total amount paid on reopened claims. This request includes any follow-up documents.

National Lloyds initially objected to each request as burdensome and privileged. After twice amending its responses, National Lloyds ultimately withdrew all of its objections and privilege assertions with respect to requests for production 12 and 13.

2

After reviewing emails produced by National Lloyds, Plaintiffs filed an "emergency" motion to compel production of various National Lloyds system-generated management reports referenced in emails. National Lloyds responded to the motion, explaining that the reports referenced did not concern historical claims and could not be generated for historical data (such as Hidalgo County hail storms years before). Furthermore, to the extent previously generated reports included historical claims, National Lloyds argued that its "network drives were collected, had search terms applied to them, and responsive claim specific and institutional emails have been produced." Plaintiffs later deposed Paul Boswell, National Lloyds's corporate representative, who gave deposition testimony regarding the management reports referenced in emails. Boswell testified that those reports had been generated in real time by National Lloyds employees and were sent by email, in PDF format, to the employees who requested the reports. He testified that the reports are not historical in nature and are not retained, so there is no ability to print past reports. Boswell also reiterated that, even if the reports attached to old emails could be retrieved, the management reports contain global claims, financial, and business information that is not specific to a particular claim or region and would include data spanning other counties in which National Lloyds operates.

Without a ruling from the special master on their motion to compel, Plaintiffs filed a "Motion to Enforce the Court's Prior Orders[,] . . . Motion to Compel Defendants to Produce Responsive Documents to Requests for Production, and Motion for Costs" (referred to as Motion to Enforce/Compel) with the pretrial court. In the Motion to Enforce/Compel, Plaintiffs argued that the management reports related to Hidalgo County hail storms attached to emails sent or received by employees of National Lloyds were responsive to Plaintiffs' requests for production and sought

sanctions against National Lloyds for its failure to produce the reports. National Lloyds responded, again arguing that the reports sought exceeded the scope of the prior requests for production and that all reports regarding the Hidalgo County hail storms had already been produced. National Lloyds also responded that "[i]n light of the Supreme Court of Texas' recent ruling in *[I]n re National Lloyds Insurance Company* . . . National Lloyds re-asserts its relevancy, overbroad, and unduly burdensome objections as they relate to the production of information related to claims of third parties." At the hearing on the motion, National Lloyds argued that the management reports sought violated this Court's holding in *In re National Lloyds Insurance Co.*, which held that a trial court had abused its discretion in ordering a defendant insurer to produce evidence related to insurance claims other than the plaintiff's claim. *See* 449 S.W.3d 486, 489–90 (Tex. 2014) (orig. proceeding) (per curiam).

On November 12, 2014, the pretrial court entered an order compelling National Lloyds to produce six categories of documents, including: "(2) **Management Reports and Emails** – National Lloyds is ordered to produce all emails, reports attached to emails, and any follow-up correspondence and information related to those reports which were sent or received by a National Lloyds employee or any affiliated adjusting company employees." The pretrial court also assessed sanctions for attorney's fees in the amount of $15,726.25. This portion of the pretrial court's order is the basis of this mandamus proceeding.

Soon after, National Lloyds filed a motion for reconsideration requesting an in camera review to evaluate the responsiveness and relevance of the management reports at issue. In its reply to Plaintiffs' response to its motion for reconsideration, National Lloyds reasserted the argument that

4

the compelled discovery was overbroad, relying on the Court's decision in *In re National Lloyds*.

National Lloyds sought "reconsideration and vacation of part (2) of the Order [pertaining to management reports and emails] pending an *in camera* review to evaluate the responsiveness and relevance of these reports." At a hearing on the motion, counsel for National Lloyds requested that the pretrial court conduct an in camera review of the documents to aid the determination. Without conducting an in camera review, the pretrial court denied the motion for reconsideration.

The Thirteenth Court of Appeals denied mandamus relief, concluding that National Lloyds waived any objection to the relevance or breadth of the requests for production. *In re Nat'l Lloyds Ins. Co.*, No. 13-14-00713-CV, 2015 WL 3751701, at *7 (Tex. App.—Corpus Christi–Edinburg May 29, 2015, orig. proceeding). Even if the objections were not waived, the court of appeals reasoned, the evidence regarding the issue of overbreadth was conflicting and thus within the sound discretion of the pretrial court. *Id.* The court of appeals did not address the sanctions award because it concluded that the sanctions could be properly reviewed on appeal from a final judgment. *Id.* Consistent with the court of appeals' opinion, Plaintiffs argue that National Lloyds waived its objection to the discovery request and order at issue.

The Texas Rules of Civil Procedure provide:

> A party must make any objection to written discovery in writing—either in the response or in a separate document—within the time for response. The party must state specifically the legal or factual basis for the objection and the extent to which the party is refusing to comply with the request.

TEX. R. CIV. P. 193.2(a). If an objection is not made within the time required, it "is waived unless the court excuses the waiver for good cause shown." *Id.* 193.2(e).

5

While National Lloyds ultimately withdrew its objections and privilege assertions to requests 12 and 13, National Lloyds objected from the earliest instance that the reports now being compelled were overbroad, irrelevant, and contrary to this Court's decision in *In re National Lloyds*.[1] National Lloyds objected to the requested discovery in writing—in its response briefing to the Motion to Enforce/Compel—within the time required for a response, and National Lloyds clearly stated the basis for the objection and the extent to which it refused the request in accordance with the Texas Rules of Civil Procedure. *See id.* 193.2(a). National Lloyds continued to object through its motion for reconsideration. We conclude that National Lloyds did not waive its objection to the relevance or breadth of the discovery order.

"A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy." *In re Nat'l Lloyds*, 449 S.W.3d at 488 (citing *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding) (per curiam)). "Our procedural rules define the general scope of discovery as any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought is 'reasonably calculated to lead to the discovery of admissible evidence.'" *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam) (quoting TEX. R.

---

[1] The first time Plaintiffs specifically sought the management reports and associated emails that are the subject of this mandamus occurred when Plaintiffs moved to compel the reports on October 16, 2014, with the special master. In that motion, Plaintiffs alleged there were discoverable reports that related to the requests for production, "which request documents related to [National Lloyds]'s handling of March 29, 2012 and/or April 20, 2012 Hidalgo County hail storm claims." Thus, even in this first request for the reports, the request was tailored to the Hidalgo County hail storms. In its response to the motion, National Lloyds asserted that the requested reports were irrelevant and that its "network drives were collected, had search terms applied to them, and responsive claim specific and institutional emails have been produced." The special master never ruled on the motion. Regardless, it did not lead to the discovery order that is now in dispute.

CIV. P. 192.3(a)). What is "relevant to the subject matter" is to be broadly construed. *In re Nat'l Lloyds*, 449 S.W.3d at 488. These liberal bounds, however, have limits, and "discovery requests must not be overbroad." *Id.* A request is not overbroad "so long as it is 'reasonably tailored to include only matters relevant to the case.'" *Id.* (quoting *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding) (per curiam)). "Discovery orders requiring document production from an unreasonably long time period or from distant and unrelated locales are impermissibly overbroad." *In re CSX Corp.*, 124 S.W.3d at 152.

The discovery order in dispute requires National Lloyds to "produce all emails, reports attached to emails, and any follow-up correspondence and information related to those reports which were sent or received by a National Lloyds employee or any affiliated adjusting company employees." In *In re National Lloyds*, we dealt with an analogous discovery request. *See* 449 S.W.3d at 487–88. The case involved allegations of underpaid insurance claims regarding storms that swept through the city of Cedar Hill and caused damage to homeowner Mary Erving's home. *Id.* at 487. Erving filed claims with her insurer, National Lloyds, who then inspected and paid the claims. *Id.* Erving believed the claims were underpaid and brought suit against National Lloyds, alleging breach of contract, breach of the duty of good faith and fair dealing, fraud, conspiracy to commit fraud, and violations of the Texas Deceptive Trade Practices Act and Chapters 541 and 542 of the Texas Insurance Code. *Id.* at 488. During discovery, Erving requested production of: (1) all claim files from the previous six years involving three individual adjusters; (2) all claim files from the past year for properties in Dallas and Tarrant Counties involving the two adjusting firms that handled Erving's claims; and (3) the names, addresses, phone numbers, policy numbers, and claim

7

numbers associated with the requested claim files. *Id.* The trial court ordered production of the files for claims handled by the two adjusting firms, limiting the order to claims related to properties in Cedar Hill and to the storms that caused the damage to Erving's home. *Id.* On mandamus review, we concluded that the information Erving sought was not reasonably calculated to lead to the discovery of admissible evidence and, therefore, the trial court's order compelling discovery of such information was overbroad. *Id.* at 490 (conditionally granting mandamus relief and directing the trial court to vacate its discovery order).

Erving presented arguments relating to breadth and relevance, many very similar to those made by Plaintiffs in this case: the information requested would be relevant to determining whether the adjusters used the same methods, amount of time, and pricing data to evaluate the homeowner's claim as compared to the claims of nearby policyholders; the homeowner needed the requested information to prove that the adjusters did not properly inspect the house or value the claims; the information would provide a baseline with which to compare her claims; and significant differences in handling the claim would be evidence of bad faith and support other legal claims including fraud. *Id.* at 488–89. However, "we fail[ed] to see how National Lloyds' overpayment, underpayment, or proper payment of the claims of unrelated third parties [was] probative of its conduct with respect to [the homeowner's] undervaluation claims at issue in [the] case." *Id.* at 489. This was especially true "given the many variables associated with a particular claim . . . . Scouring claim files in hopes of finding similarly situated claimants whose claims were evaluated differently from [the homeowner's] is at best an 'impermissible fishing expedition.'" *Id.* (citing *Sanderson*, 898 S.W.2d at 815). Although the discovery order was limited in time to the two storms at issue and limited by

8

location to only properties in Cedar Hill, the "limits in and of themselves [did] not render the underlying information discoverable." *Id.* at 489–90.

The situation here is nearly identical, except the ordered discovery is even less narrowly tailored. Here, the discovery order is not limited by location or weather event and exceeds the scope of requests for production 12 and 13. Requests 12 and 13 are specifically tailored to the Hidalgo County hail storms that occurred in March and April of 2012, but the ordered discovery is for "all emails, reports attached to emails, and any follow-up correspondence and information related to those reports which were sent or received by a National Lloyds employee or any affiliated adjusting company employees." National Lloyds identified fifteen reports that would be compelled under the pretrial court's order.[2] Denise Griffin, the Application Analyst Team Lead for National Lloyds, gave affidavit testimony explaining that none of the fifteen reports identified pertain to a particular loss date or county, except for the "exposure report"—a listing of total insured value that does not include information related to a specific claim. Therefore, the reports encompass claims in different counties, experiencing different causes of loss, on different dates from the Hidalgo County storms occurring March 29 and April 20, 2012. *Cf. In re CSX Corp.*, 124 S.W.3d at 153 ("A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information.").

---

[2] The fifteen reports are titled: Paid Claims by Examiner; Open Claims by Examiner; FTP Claims by Examiner; Top Active Agents by Company; Open Claims by Examiner—Lawsuit; Claims with Holdback; Open Claims by Adjustor; Outstanding Claims Analysis; Claims Adjustor List; Claims Dashboard; Exposure Report; Adjuster Pre-Payment Register; Invalid Scan File Names; New Claims; and Reported Claims.

9

Plaintiffs argue that the discovery order is not overbroad because the homeowners seek to recover punitive damages from National Lloyds for bad faith, fraud, and violations of the Insurance Code, and they are therefore entitled to show that National Lloyds had knowledge of its own misdeeds and a pattern and practice to defraud its insureds. This, however, does not entitle Plaintiffs to discover documents unrelated to the insurance event at issue. *In re Nat'l Lloyds*, 449 S.W.3d at 489–90. In *Texaco, Inc. v. Sanderson*, the plaintiffs wanted to prove a general "corporate strategy to ignore safety laws," where the principal issue was whether the defendants were grossly negligent in exposing the plaintiffs' decedents to asbestos, benzene, and other such toxic substances. 898 S.W.2d at 815. We explained that "[w]hile plaintiffs are entitled to discover evidence of defendants' safety policies and practices as they relate to the circumstances involved in their allegations, a request for all documents authored by [the corporate safety director] on the subject of safety, without limitation as to time, place or subject matter, is overbroad." *Id.* The same is true here. Plaintiffs may discover reports and emails of National Lloyds that are limited as to time, place, or subject matter, but not indiscriminate reports and emails that lack any limitation.

Finally, despite Plaintiffs' arguments to the contrary, the fact that this is an MDL case and not a single-plaintiff case does not entitle Plaintiffs to such broad discovery. In *In re Dana Corp.*, we addressed discovery in mass toxic-tort litigation. 138 S.W.3d 298, 300 (Tex. 2004) (orig. proceeding) (per curiam). We disagreed with the argument that a special rule should apply for large-scale discovery. *Id.* at 301. Instead, we applied the same relevance standard used in all other cases to determine that the discovery request at issue was overbroad. *Id.* at 301–02.

Here, the discovery order was not tailored with regard to time, place, or subject matter and was therefore overbroad. The pretrial court abused its discretion in compelling production of the management reports and emails, and mandamus relief is therefore warranted. *See Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding) (per curiam) (citing *Sanderson*, 898 S.W.2d at 815).

In its next issue, National Lloyds asserts the associated sanctions ordered should also be vacated. "Mandamus is an extraordinary remedy, available only when a trial court clearly abuses its discretion and when there is no adequate remedy on appeal." *In re Ford Motor Co.*, 988 S.W.2d 714, 718 (Tex. 1998) (orig. proceeding). If a motion to compel is granted, the trial court

> *shall*, after opportunity for hearing, require a party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay . . . the moving party the reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

TEX. R. CIV. P. 215.1(d) (emphasis added). The sanctions order "shall be subject to review on appeal from the final judgment." *Id.* "A trial court's ruling on a motion for sanctions is reviewed under an abuse of discretion standard." *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). The test for abuse of discretion is "whether the court acted without reference to any guiding rules and principles." *Id.* (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). To determine whether the sanctions imposed are just, we consider: "First, . . . whether there is a direct relationship between the offensive conduct and the sanctions. . . . Second, . . . whether the sanctions are excessive." *In re Ford Motor Co.*, 988 S.W.2d at 718.

11

The pretrial court's order compelled production of six categories of information: (1) Accounting Reports; (2) Management Reports and Emails; (3) Performance Review and Job Description and Responsibilities; (4) TDI Documents and Correspondence; (5) Persons included in Email Groups; and (6) Field/Scope Notes. Of the six categories compelled, National Lloyds challenges only one, Management Reports and Emails, in this proceeding. Although we conclude that the pretrial court's order is overbroad as to the management reports and emails, we recognize that National Lloyds failed to produce five other categories of discovery, necessitating Plaintiffs' Motion to Enforce/Compel. The pretrial court imposed sanctions in the amount of $15,726.25, the amount it determined to be caused by the failure of National Lloyds to produce documents. The sanctions order does not specify the amount of attorney's fees attributed to each category of information compelled, and we cannot assume that reversal of one-sixth of the categories of information requires a one-sixth reduction of the sanctions. We believe the pretrial court is better situated to determine whether the attorney's fees award remains appropriate in light of the Court's decision today, and we direct the pretrial court to do so.

Accordingly, without hearing oral argument, TEX. R. APP. P. 52.8(c), we conditionally grant mandamus relief and direct the pretrial court to vacate part two (2) of its discovery order, relating to management reports and emails, and reevaluate the ordered sanctions. We are confident the pretrial court will comply, and the writ will issue only if it fails to do so.

OPINION DELIVERED: October 28, 2016

12