COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

No. 08-16-00175-CV

IN RE: §

HALLMARK COUNTY MUTUAL                    AN ORIGINAL PROCEEDING
INSURANCE COMPANY,                   §

IN MANDAMUS

Relator.                   §

§

# **O P I N I O N**

Hallmark County Mutual Insurance Company, Relator, has filed a petition for writ of mandamus against the Honorable Sue Kurita, Judge of the County Court at Law No. 6 of El Paso County, Texas. Relator is challenging the trial court's order compelling discovery. We conditionally grant the petition for writ of mandamus.

## **FACTUAL SUMMARY**

This is an insurance coverage case. Gerardo Morales Gutierrez was a truck driver employed by Arca Trucking Services. On May 9, 2012, Gutierrez was sleeping in the sleep compartment of a tractor-trailer rig while Jose Manuel Martinez Ibarra, employed by Eagle Rig Manufacturing & Service, was welding on the tank trailer. The welding ignited petroleum gases and caused an explosion, killing Gutierrez.

Margarita Gutierrez Moreno, Pablo Morales Duarte, and Migdalia Griselda Morales as

independent administrator of the estate of Gerardo Morales Gutierrez (the Underlying Plaintiffs), filed suit against Ibarra, Eagle Rig, and Arca Trucking.[1] At the time of the accident, Hallmark insured Arca Trucking. Hallmark paid Arca Trucking's first-party claim for property damage to the tractor-trailer involved in the accident, but it denied Arca Trucking's tender for defense with respect to the Decedent Estate's claim for damages. Hallmark subsequently intervened in the suit brought by the Underlying Plaintiffs, and it sought to recover the amount it had paid Arca Trucking for the first-party claim for property damages. The parties waived their right to a jury trial, and the 346th District Court found Arca Trucking's negligence caused the death of Gutierrez. The court awarded total damages of over $6,000,000 against Arca Trucking and entered judgment accordingly.

The Underlying Plaintiffs obtained an assignment and turnover order of all causes of action belonging to Arca Trucking against Hallmark. In 2014, the Underlying Plaintiffs and Catalina Hernandez, individually and d/b/a Arca Trucking Services, filed suit against Hallmark in cause number 2014DCV2416 in the County Court at Law No. 6 of El Paso County, alleging causes of action for breach of the duty to defend, breach of the duty to settle, unfair claim practices, breach of the duty of good faith and fair dealing, violations under Chapters 541 and 542 of the Texas Insurance Code, and DTPA fraud claims. The opinion will refer to the Underlying Plaintiffs, Catalina Hernandez, and Arca Trucking, collectively, as the Real Parties in Interest.

During discovery, the Real Parties in Interest requested production of: (1) the

---

[1] The case was styled Margarita Gutierrez Moreno and Pablo Morales Duarte, Individually and as Representatives of the Estate of Gerardo Morales Gutierrez, Deceased v. Jose Manuel Martinez Ibarra, Eagle Rig Manufacturing & Service, Ltd., and Arca Trucking Services, LLC (cause number 2012DCV04214). Migdalia Griselda Morales was subsequently appointed as the independent administrator of the decedent's estate, and the style of the case was changed to Margarita Gutierrez Moreno, Pablo Morales Duarte, and Migdalia Griselda Morales as Independent Administrator of the Estate of Gerardo Morales Gutierrez v. Arca Trucking Services, LLC.

intervention filed by Hallmark; (2) any contacts Hallmark had with Steven R. Hudgins, the attorney for Hallmark who filed the intervention; (3) the claim file for the Intervention; and (4) other lawsuits in the last ten years that have been filed against Hallmark regarding a denial of coverage or the denial of a defense. At the same time, the Real Parties in Interest noticed the deposition of Hallmark's corporate representative, and asked that he or she testify about the documents requested by the Real Parties in Interest. Hallmark objected and filed motions to quash and for a protective order. The Real Parties in Interest filed a motion to compel. Following a hearing, the trial court granted the motion to compel on July 21, 2016.

*Mandamus Standard*

To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court committed a clear abuse of discretion for which the relator has no adequate remedy at law. *In re Frank Kent Motor Company*, 361 S.W.3d 628, 630 (Tex. 2012); *In re Prudential Insurance Company of America*, 148 S.W.3d 124, 135-36 (Tex. 2004). A trial court abuses its discretion when it acts arbitrarily, capriciously, and without reference to guiding principles. *In re Mid-Century Insurance Company of Texas*, 426 S.W.3d 169, 178 (Tex.App.-- Houston [1st Dist.] 2012, orig. proceeding). A trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Consequently, an abuse of discretion occurs if a trial court clearly fails to correctly analyze or apply the law. *In re Olshan Foundation Repair Co., LLC*, 328 S.W.3d 883, 888 (Tex. 2010). A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy. *In re National Lloyds Insurance Company*, 449 S.W.3d 486, 488 (Tex. 2014).

*Clear Abuse of Discretion*

3

Generally, the scope of discovery is within the trial court's discretion. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003); *Dillard Department Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995). The trial court must, however, make an effort to impose reasonable discovery limits. *In re CSX Corp.*, 124 S.W.3d at 152; *In re American Optical*, 988 S.W.2d 711, 713 (Tex. 1998). The trial court abuses its discretion by ordering discovery that exceeds that permitted by the rules of procedure. *In re CSX Corp.*, 124 S.W.3d at 152; *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995).

The Rules of Civil Procedure define the general scope of discovery as any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought is "reasonably calculated to lead to the discovery of admissible evidence." TEX.R.CIV.P. 192.3(a); *In re National Lloyds Insurance Company*, --- S.W.3d ---, 2016 WL 6311286, at *4 (Tex. October 28, 2016); *In re CSX Corp.*, 124 S.W.3d at 152. The scope of discovery is limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information. *See Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990); TEX.R.CIV.P. 192.4. Even though the scope of discovery is broad, a discovery request must show a reasonable expectation of obtaining information that will aid the dispute's resolution. *In re CSX*, 124 S.W.3d at 152. In other words, a discovery request must be "reasonably tailored" to include only relevant matters. *Id.* A discovery request which calls for the production of documents that are irrelevant to the parties' claims or defenses constitutes an impermissible "fishing expedition." *See In re American Optical Corporation*, 988 S.W.2d 711, 713 (Tex. 1998) (stating that the Supreme Court has repeatedly emphasized that discovery may not be used as a fishing expedition and discovery requests must be reasonably tailored to include only matters relevant to the case).

4

*Discovery of Other Suits*

Hallmark challenges the trial court's discovery order as it pertains to the request of the Real Parties in Interest for production of petitions and complaints filed in the last ten years against Hallmark regarding a denial of coverage or the denial of a defense. It first argues that the information sought is wholly irrelevant and immaterial to the present action. In support of its argument, Hallmark relies primarily on *In re National Lloyds Insurance Company*, 449 S.W.3d 486, 488 (Tex. 2014).

In *National Lloyds*, storms in September 2011 and June 2012 caused damage to the home of the plaintiff, Mary Erving, located in Cedar Hill, and she filed claims with her homeowner's insurance carrier, National Lloyds Insurance Company. *National Lloyds*, 449 S.W.3d at 487. Adjusters went to Erving's home and National Lloyds paid the claims. *Id.* Erving filed suit alleging that National Lloyds had undervalued her claims, and she sought production of all claim files over a six-year-period involving the three individual adjusters. *Id.* at 488. Additionally, she requested all claim files for the previous year for properties in Dallas and Tarrant County involving the two adjusting firms that handled her claims. *Id.* National Lloyds objected to the requests as overbroad, unduly burdensome, and seeking information that was not relevant or calculated to lead to the discovery of admissible evidence. *Id.* The trial court ordered production of the files for claims handled by the two adjusting firms, but it restricted the discovery to claims related to properties in Cedar Hill and to the particular storms that caused damage to the plaintiff's home. *Id.* National Lloyds filed a mandamus petition in the court of appeals. *Id.* After the court of appeals denied relief, National Lloyds filed a petition in the Texas Supreme Court. *Id.*

Erving argued in the Supreme Court that the requested documents would show whether

5

the adjusters used the same methods, spent an equivalent amount of time, and used the same pricing data when they determined her claims as compared to the claims of the other Cedar Hill policyholders. *National Lloyds*, 449 S.W.3d at 488-89. She also planned to prove that National Lloyds undervalued her claims by "establishing a baseline" and comparing her claims to that baseline. *Id.* at 489. The Supreme Court granted mandamus relief, holding that National Lloyds' proper payment, overpayment, or underpayment of the claims of unrelated third parties is not probative of its conduct with respect to the plaintiff's undervaluation claims at issue in the case. *National Lloyds*, 449 S.W.3d at 489. The Court noted that "[s]couring claim files in hopes of finding similarly situated claimants whose claims were evaluated differently from [the plaintiff's] is at best an 'impermissible fishing expedition.'" *Id.* (quoting *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995)). It further concluded that the information sought does not appear reasonably calculated to lead to the discovery of evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable. *Id.* The Court held that the trial court's efforts to limit both the time period and the geographic area did not render the underlying information discoverable. *Id.* at 489-90.

In the instant case, the Real Parties in Interest seek the production of all petitions and complaints filed in the last ten years against Hallmark regarding a denial of coverage or the denial of a defense. This discovery request is significantly broader than the one made in *National Lloyds* because the trial court did not limit it in time or geographic place. The Real Parties in Interest assert that the purpose of this discovery request is to "discern whether Relator has a pattern or practice of defense denials in similar situations, which will allow Real Party to propound additional discovery regarding Relator's procedure for denying a defense in this case."

6

Although the Real Parties in Interest seek to distinguish their request from the one made in *National Lloyds*, it is apparent that the Real Parties in Interest wish to obtain this information for the purpose of comparing the denial of defense claim to other cases where Hallmark denied a defense. In *National Lloyds*, the plaintiff sought to compare the information for the purpose of finding similarly-situated parties whose claims were treated differently than her claim. *See National Lloyds*, 449 S.W.3d at 488-89. Here, the Real Parties in Interest intend to find similarly-situated cases where Hallmark denied a defense with the purpose of determining whether Hallmark has a pattern of defense denials in similar situations.

Whether an insurer of a liability policy is obligated to defend the insured is a question of law to be decided by the court. *TIG Insurance Co. v. San Antonio YMCA*, 172 S.W.3d 652, 660 (Tex.App.--San Antonio 2005, no pet.); *State Farm Gen. Ins. v. White*, 955 S.W.2d 474, 475 (Tex.App.--Austin 1997, no pet.). The duty to defend is triggered by the factual allegations in the plaintiff's petition and the language of the insurance policy. *TIG Insurance*, 172 S.W.3d at 660. Hallmark's denial of a defense with respect to unrelated third parties is not probative of the denial of a defense claim at issue in this case. *See National Lloyds*, 449 S.W.3d at 489.

Further, the Supreme Court recently addressed a "pattern and practice" argument similar to the one made by the Real Parties in Interest. *In re National Lloyds Insurance Company*, 2016 WL 6311286, at *5. Several plaintiffs sued National Lloyds alleging it had underpaid claims arising out of two hailstorms in Hidalgo County. *Id.*, at *1. The plaintiffs sought to discover documents related to other claims arising out of specific hailstorms in Hidalgo County based on assertion that defendant had a pattern and practice of underpaying claims and defrauding its insureds. *Id.*, at *4-5. The plaintiffs argued the discovery request was not overbroad because the homeowners were seeking to recover punitive damages from National Lloyds for bad faith,

7

fraud, and violations of the Insurance Code, and they are therefore entitled to show that National Lloyds had knowledge of its own misdeeds and a pattern and practice to defraud its insureds. *Id.*, at \*5. The Supreme Court rejected this argument and held that the plaintiffs were not entitled to discover documents unrelated to the insurance event at issue. *Id.* (citing *In re National Lloyds*, 449 S.W.3d at 489-90).

The information sought by the Real Parties in Interest is an impermissible fishing expedition, and the information sought is not relevant to the subject matter of the case or calculated to lead to the discovery of admissible evidence. The trial court abused its discretion by entering the discovery order.

*Hallmark's Intervention*

Hallmark also challenges the trial court's discovery order as it pertains to the intervention Hallmark filed, any contacts Hallmark had with the attorney who filed the intervention, and the claim file for the intervention. This issue is addressed to the documents the Real Parties in Interest sought regarding the intervention and the oral deposition testimony of a corporate representative regarding these topics and documents.

Hallmark first argues that any deposition testimony or production of documents regarding the intervention, including the Intervention claim file and communications with counsel about the intervention, is irrelevant to the claims asserted in the present action because the intervention pertains to its insured's first-party property damage claim which is separate and distinct from any claim under the liability coverage afforded under the Hallmark policy. Hallmark maintains that the insuring agreement for the covered property is a separate and distinct contract from the liability insurance contract. It reasons that since the claims of the Real Parties in Interest are directly related to whether there existed a duty of defense and indemnity under the liability

8

portion of the Hallmark policy, and no claims are related to the first-party property damage claim, the documents and testimony regarding the intervention are irrelevant to the claims at issue in this case and outside of the scope of discovery.

The insurance policy in question contains separate and distinct insuring agreements with distinct limits of liability for each. In this situation, the insuring agreements are treated as separate contracts. *See M.J.R. Corp. v. Scottsdale Ins. Co.,* 803 S.W.2d 426, 430 (Tex. App.--Dallas 1991, no writ). The Real Parties in Interest have not shown that Hallmark's intervention in the suit bears any relationship to the denial of a defense under the liability coverage of Arca Trucking's policy. Consequently, the documents and deposition testimony sought regarding the intervention are not probative of its denial of a defense in this case. *See National Lloyds*, 449 S.W.3d at 489. The trial court abused its discretion by ordering discovery of this irrelevant information. Having concluded that Hallmark's communications with its attorneys about the intervention are not discoverable, it is unnecessary to address Hallmark's argument that the discovery order compelled it to disclose privileged information.

*No Adequate Remedy by Appeal*

The only remaining question is whether review of the trial court's order on direct appeal is an adequate remedy. The Supreme Court has held that a party lacks an adequate remedy at law when a trial court enters an order compelling the party to respond to discovery requests that are overly broad or that require the party to provide information that is irrelevant. *See In re Deere & Co. d/b/a John Deere Co*., 299 S.W.3d 819, 820 (Tex. 2009); *In re Allstate County Mutual Insurance Company,* 227 S.W.3d 667, 668 (Tex. 2007) (orig. proceeding); *In re CSX Corp*., 124 S.W.3d at 153; *Hall*, 909 S.W.2d at 492. When a discovery order compels production of patently irrelevant documents there is no adequate remedy by appeal because it

9

imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party. *See In re CS*X, 124 S.W.3d at 153. That is particularly true in this case because the Real Parties in Interest are seeking information covering a ten-year-period.

Having found that Hallmark has established it is entitled to mandamus relief, we conditionally grant the petition for writ of mandamus and order the trial court to set aside its order entered on July 21, 2016 granting the motion to compel. The writ will issue only if the trial court fails to comply.

STEVEN L. HUGHES, Justice

November 30, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.