# Supreme Court of Texas

No. 20-0827

In re UPS Ground Freight, Inc.,

*Relator*

On Petition for Writ of Mandamus

**PER CURIAM**

Justice Lehrmann and Justice Busby did not participate in the decision.

In this wrongful-death suit, the trial court ordered UPS Ground Freight, Inc. to produce the results of all alcohol and drug tests conducted on all current and former drivers at its Irving, Texas facility for stated time periods preceding a fatal multi-vehicle accident. We conditionally grant mandamus relief because the discovery requests are overbroad in seeking irrelevant information about uninvolved UPS drivers, and UPS has no adequate remedy by appeal.

On September 21, 2017, a UPS driver operating out of the Irving facility was involved in a multi-vehicle collision that resulted in the death of Nathan Dean Clark. Post-accident drug testing for UPS's employee came back positive for THC, but UPS disputes whether any impairment was a causative factor in the accident.

Clark's mother, Jacintha Nicole McElduff, sued the driver, Phillip Villarreal, for negligence and gross negligence and UPS for (1) negligent retention and training of Villarreal; (2) negligent entrustment of a vehicle to Villarreal; and (3) gross negligence. McElduff alleges that Villarreal knowingly drove UPS trucks while under the influence of drugs; UPS knowingly failed to properly drug test Villareal and knowingly allowed him to drive while under the influence of drugs; and UPS knowingly failed to comply with its own policies and federal law, including the failure to properly drug test.

In discovery, UPS produced information about its federally mandated alcohol-and-drug testing program, which is administered by a third-party vendor for a nationwide pool of UPS drivers. UPS also made corporate representatives available for examination about the company's testing process and procedures and produced all of Villarreal's alcohol-and-drug test records, including random drug tests and post-accident testing from the day of the accident. In deposition testimony, Villareal, a 25-year employee, admitted that he had been using marijuana for two to five years before the fatal collision. During that time period, he had been randomly drug tested only one time. Villareal also testified that he had provided marijuana to other drivers in the workplace and identified by name one such driver, who similarly admitted to using marijuana.

To establish a pattern and practice of failing to adequately drug test at the Irving facility over a period of years, McElduff served discovery requests seeking (1) the names, addresses, and telephone numbers of "all Commercial Vehicle drivers who drove Commercial

2

Vehicles" for UPS who were "dispatched out of the [UPS] facility in Irving, Texas" during the 11-year period preceding the accident and (2) "all documentation of all alcohol, drug, and/or controlled-substance tests" for each of those drivers—including pre-employment, random, reasonable-suspicion, periodic, and post-accident testing—without any time restriction. In compelling production, the trial court overruled UPS's objections, which included that the requests were overbroad, sought irrelevant information, sought information protected from disclosure under federal law, and violated constitutional and common-law privacy rights of uninvolved, nonparty drivers.

The court of appeals twice conditionally granted mandamus relief—once in whole and once in part. In the first original proceeding, the court held that the discovery requests were "not appropriately limited in time" and, therefore, overbroad. No. 12-19-00412-CV, 2020 WL 975357, at *4 (Tex. App.—Tyler Feb. 28, 2020, orig. proceeding). The court suggested that current federal-law mandates were "instructive on the question of what constitutes an appropriate time period for discovery" and required employers like UPS "to retain positive drug test results for five years, records related to the controlled substances collection process for two years, and negative drug test results for only one year." *Id.* at *3. Ruling only on overbreadth, the court expressly declined to address UPS's other objections to production. *Id.* at *3 n.1.

Back before the trial court, UPS reasserted its objections, but once again, the court compelled production of the same information. This time, however, the court limited the scope of discovery to (1) five years

before the accident for names, addresses, and telephone numbers of drivers at the Irving facility; (2) five years for positive alcohol-and-drug test results from those drivers; (3) two years for records pertaining to controlled-substance collection processes; and (4) one year for all negative alcohol-and-drug test results for Irving facility drivers.

In the second mandamus proceeding, UPS challenged the revised discovery order, and the court of appeals conditionally granted mandamus relief in part. The court ruled adversely to UPS on its preemption, relevance, and overbreadth objections but found some merit to its privacy objections, holding that the trial court abused its discretion by compelling production of unredacted records of drug-and-alcohol test results and collection processes. 629 S.W.3d 441, 446-51 (Tex. App.—Tyler 2020). The court concluded that "McElduff has not shown any legitimate right to the identities of the non-party drivers whose test results are to be provided" and required the trial court to protect the identities of the drivers involved by modifying its order to permit production of test results and test-collection processes only with identifying information redacted. *Id.* at 451-52.

The trial court complied with the appellate court's directive and, just as it had before, ordered production of information pertaining to hundreds of current and former UPS drivers subject only to the appellate court's time-period and redaction mandates. On the trial court's rendition of a compliant discovery order, the court of appeals dismissed UPS's mandamus petition as moot. ___ S.W.3d ___, 2020 WL 5949240, at *1 (Tex. App.—Tyler Oct. 7, 2020).

4

In this original proceeding, we agree with UPS that the discovery requested and compelled by the trial court was insufficiently narrowed and remains overly broad in scope. Accordingly, we do not reach UPS's remaining objections to production.

Although the scope of discovery is generally within the trial court's discretion, "an order that compels overly broad discovery is an abuse of discretion for which mandamus is the proper remedy." *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009). An overbroad discovery request is, in essence, one that seeks irrelevant information. *In re K&L Auto Crushers, LLC*, 627 S.W.3d 239, 251 (Tex. 2021); *see In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 n.1 (Tex. 1999) ("[O]verbroad requests [include those] encompassing time periods, products, or activities beyond those at issue in the case—in other words, matters of questionable relevancy to the case at hand."). Evidence is relevant if it tends to make a consequential fact "more or less probable than it would be without the evidence." TEX. R. EVID. 401.

What is "relevant to the subject matter" is broadly construed, but there are limits. *In re Nat'l Lloyds Ins.*, 507 S.W.3d 219, 223 (Tex. 2016). As this Court "has repeatedly emphasized," "discovery may not be used as a fishing expedition." *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998). Accordingly, "[a] central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003); *see Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex.

5

1995) (explaining that discovery requests should be "reasonably tailored to include only matters relevant to the case").

The information McElduff seeks is tantamount to a fishing expedition. This lawsuit arises from a motor-vehicle accident involving a single UPS driver. Confidential drug-test results for UPS drivers who were neither involved nor implicated in causing the accident that claimed Clark's life are irrelevant, as they do not make any fact consequential to McElduff's claims more or less probable than it would be without the results. TEX. R. EVID. 401. Whether any other UPS driver tested positive or negative for drugs or alcohol on unrelated occasions does not make it more or less probable that Villareal was negligent on the occasion in question. The test results that actually bear on the defendants' alleged culpability—Villarreal's test results—have already been produced. Drug use, or not, of any other driver is not probative of allegations that UPS negligently trained, retained, and entrusted a vehicle to Villarreal or was grossly negligent in these regards.

McElduff nonetheless argues that drug-test records for nonculpable nonparties are relevant to her broader claims that UPS was negligent or grossly negligent in generally "failing to properly train, supervise, monitor, and evaluate its commercial motor vehicle drivers" and in "failing to comply with federal regulations concerning its drivers." More particularly, she asserts that discovery of test results for hundreds of current and former UPS drivers at the Irving facility is relevant to UPS's compliance with federal regulations governing mandatory drug testing of commercial vehicle drivers. The record does not bear out this

contention. Even if the compelled discovery had some tenuous relevance—and it does not—the results of drug tests conducted only in the Irving facility represent merely a small piece of the company's national testing program and thus reveal nothing about whether that program complies with federal regulations. McElduff may be entitled to discovery about UPS's testing program—and at least some of that information has already been produced or made available—but the record does not substantiate that test results from individual drivers at a single UPS facility have any bearing on the national testing program's compliance with federal mandates.

We thus hold that, even as narrowed by the amended discovery order, the trial court erred in compelling disclosure of confidential drug-test records of nonparty UPS employees who have no alleged involvement in the accident that caused Clark's death. Accordingly, without hearing oral argument, *see* TEX. R. APP. P. 52.8(c), we conditionally grant UPS's petition for writ of mandamus and direct the trial court to vacate the portion of the September 30, 2020 discovery order compelling production of information and records pertaining to drug-and-alcohol test results for current and former UPS drivers who are not parties to the litigation and who were not involved in the September 2017 accident. The writ will issue only if the trial court does not comply.

**OPINION DELIVERED:** June 17, 2022

7