**Petition for Writ of Mandamus Denied and Memorandum Opinion filed December 12, 2017.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00436-CV

---

## IN RE BHP BILLITON PETROLEUM PROPERTIES (N.A.), LP AND BHP BILLITON PETROLEUM (TXLA OPERATING) COMPANY, Relators

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**164th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-42862**

## MEMORANDUM OPINION

Relators BHP Billiton Petroleum Properties (N.A.), LP and BHP Billiton Petroleum (TXLA Operating) Company (collectively, "BHP Billiton") ask this court to issue a writ of mandamus compelling the Honorable Alexandra Smoots-Thomas, presiding judge of the 164th District Court of Harris County, to (1) vacate an August 11, 2017 order denying their plea to the jurisdiction; (2) grant the plea to the jurisdiction; and (3) dismiss certain claims over which BHP Billiton contends the

trial court has no jurisdiction. *See* Tex. Gov't Code Ann. § 22.221 (Vernon Supp. 2017); *see also* Tex. R. App. P. 52.

We deny the petition.

## BACKGROUND

Real party in interest EF Non-Op LLC ("EF") is an oil and gas exploration and production company; it owns working interests in leases and wells in the White Kitchen and Martin Ranch prospects in the Eagle Ford Shale.

BHP Billiton is a working interest owner and the operator of approximately 60 wells in which EF holds a working interest.

As operator, BHP Billiton develops the leases by drilling and operating wells. BHP Billiton also arranges for disposition of the oil and gas produced by those wells. EF is charged with its proportionate share of expenses from these operations and receives its share of the oil and gas produced.

An affiliate of BHP Billiton called BHP Billiton Petroleum (Eagle Ford Gathering), LLC ("Eagle Ford Gathering"), provides gas gathering, compression, and treatment services in the Hawkville area of the Eagle Ford Shale.

Eagle Ford Gathering operates 568 miles of gathering pipelines, which transport gas from the wellheads to central delivery points where larger pipelines transport the gas to downstream sales points. BHP Billiton has contracted to have Eagle Ford Gathering perform gas gathering services. Because EF elected to transport its gas on Eagle Ford Gathering's pipeline, EF is charged a proportionate share of the gas gathering charges.

EF sued and asserted that BHP Billiton breached obligations and duties arising under various joint operating agreements ("JOAs").[1]  BHP Billiton alleged JOA breaches included those relating to "Gathering Issues," a shorthand term used in this litigation to describe EF's contention that Eagle Ford Gathering charged more than 59 cents per mcf — an above-market rate — for gathering, treating, and transporting the gas to a central delivery point.

BHP Billiton filed a plea to the jurisdiction asserting that EF first had to pursue its claim for "Gathering Issues" with the Texas Railroad Commission before EF could sue.  BHP Billiton argued that the Commission has exclusive original

---

[1] In its original petition, EF brought claims against BHP Billiton for asserted breaches of the duties to (1) conduct its activities as a reasonable prudent operator; (2) drill wells on a competitive contract basis at the usual and prevailing rates; (3) keep an accurate record of the joint account, including all expenditures incurred thereunder; (4) account for non-operator funds advanced to BHP; (5) provide full and free access to all operations and activities, including but not limited to field operations and BHP Billiton's books and records relating to those operations and activities; (6) refrain from conducting any reworking, deepening, plugging back, recompletion, or sidetracking operations with respect to any well then capable of producing paying quantities except with the consent of all parties; (7) provide each non-operator with a separate proposal and option to participate in any completion attempt with respect to wells drilled; (8) refrain from reworking, recompleting, or plugging back a well except pursuant to the proposal and election procedures provided for in the agreement; (9) refrain from undertaking any single project reasonably estimated to require an expenditure in excess of $50,000 except in connection with an operation previously authorized by the parties; (10) charge each working interest owner only for its proportionate share of the costs of developing and operating the contract area; (11) include statements with joint interest billings, which identified (a) the authority for expenditure; (b) the lease facility, and (c) all charges and credits, summarized by appropriate classifications of investments and expenditures; (12) include statements with submitted joint interest billings, which separately identified and fully described in detail controllable material and unusual charges and credits; (13) submit only appropriate expenses to the working interest owners for payment, as distinguished from expenses otherwise covered by the overhead rates set out in the accounting procedures; and (14) refrain from conducting workover or other drilling or development operations without the consent of all parties to the JOAs, so long as any completion in the subject well was producing or capable of producing in paying quantities.

jurisdiction over disputes concerning rates charged by gas utilities such as Eagle Ford Gathering because the Commission regulates rates and services under the Gas Utility Regulatory Act ("GURA"). *See* Tex. Util. Code Ann. § 102.001(a) (Vernon 2007). The trial court held a hearing on the plea to the jurisdiction and ordered EF to re-plead its claims regarding the Gathering Issues.

In response to EF's seventh amended petition, BHP Billiton filed an amended and supplemental plea to the jurisdiction on the Gathering Issues. BHP contended that these issues relate to Eagle Ford Gathering's rates and services and, therefore, come within the Railroad Commission's exclusive jurisdiction. After holding a hearing on the plea to the jurisdiction on May 12, 2016, the trial court signed the order denying the plea to the jurisdiction on May 16, 2017.

BHP Billiton asks this court to compel the trial court to (1) set aside its May 16, 2017 order denying the plea to the jurisdiction; (2) grant the plea to the jurisdiction; and (3) dismiss EF's claims related to the Gathering Issues.

### STANDARD OF REVIEW

A relator seeking mandamus relief generally must demonstrate that (1) the trial court clearly abused its discretion; and (2) the relator has no adequate remedy by appeal. *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 226 (Tex. 2016) (orig. proceeding) (per curiam). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302–03 (Tex. 2016) (orig. proceeding) (per curiam); *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam).

4

Subject matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plea to the jurisdiction is a dilatory plea by which a party challenges the court's authority to determine the subject matter of the action. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). We construe the pleadings liberally in favor of the pleader and look to the pleader's intent to determine whether the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A trial court's ruling on a plea to the jurisdiction is subject to de novo review. *Id.*

District courts are courts of general jurisdiction and generally have subject matter jurisdiction absent a showing to the contrary. *Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000). Mandamus may correct a trial court's denial of a plea to the jurisdiction based on an agency's exclusive jurisdiction because the judicial appropriation of state agency authority would be a clear disruption of the orderly processes of government. *See In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004) (orig. proceeding). There is no presumption that administrative agencies have authority to resolve disputes. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002). "[A]dministrative bodies have only the powers conferred on them by clear and express statutory language or implied powers that are reasonably necessary to carry out the Legislature's intent." *Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006). An agency has exclusive jurisdiction when "a pervasive regulatory scheme indicates that [the Legislature] intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *Blue Cross Blue Shield of Tex. v. Duenez*, 201 S.W.3d 674,

5

675–76 (Tex. 2006) (per curiam) (quoting *Entergy Corp.*, 142 S.W.3d at 322). Whether an administrative agency has exclusive jurisdiction is a question of law subject to de novo review. *Entergy Corp.*, 142 S.W.3d at 322.

If an agency has exclusive jurisdiction, a plaintiff must exhaust administrative remedies before seeking judicial review of the decision. *Thomas*, 207 S.W.3d at 340. If a party files suit before exhausting exclusive administrative remedies, the courts lack jurisdiction and must dismiss the case. *Clint Indep. Sch. Dist. v Marquez*, 487 S.W.3d 538, 544 (Tex. 2016). Until the party has satisfied the exhaustion requirement, the trial court lacks subject matter jurisdiction and must dismiss the claims without prejudice to refiling. *Thomas*, 207 S.W.3d at 340.

## ANALYSIS

The crux of this dispute is whether the Gathering Issues fall within the Railroad Commission's exclusive jurisdiction under GURA. To resolve this dispute, we first discuss GURA in greater detail. We then analyze its applicability to the Gathering Issues being litigated in this case.

## I.    GURA Establishes a Regulatory System for Gas Utilities

The Texas Legislature enacted GURA because "[g]as utilities are by definition monopolies in the areas they serve. As a result the normal forces of competition that regulate prices in a free enterprise society do not operate. Public agencies regulate utility rates, operations, and services as a substitute for competition." Tex. Util. Code Ann. § 101.002(b) (Vernon 2007). GURA establishes "a comprehensive and adequate regulatory system for gas utilities to

6

assure rates, operations, and services that are just and reasonable to the consumers and to the utilities." *Id.* § 101.002(a).

The term "'gas utility' includes a person or river authority that owns or operates for compensation in this state equipment or facilities to transmit or distribute combustible hydrocarbon natural gas or synthetic natural gas for sale or resale in a manner not subject to the jurisdiction of the Federal Energy Regulatory Commission under the Natural Gas Act (15 U.S.C. Section 717 et seq.)." Tex. Util. Code Ann. § 101.003(7) (Vernon Supp. 2017).

The term "rate" means:

(A) any compensation, tariff, charge, fare, toll, rental, or classification that is directly or indirectly demanded, observed, charged, or collected by a gas utility for a service, product, or commodity described in the definition of gas utility in this section; and

(B) a rule, regulation, practice, or contract affecting the compensation, tariff, charge, fare, toll, rental, or classification.

*Id.* § 101.003(12). GURA further defines the term "service" as follows:

"Service" has its broadest and most inclusive meaning. The term includes any act performed, anything supplied, and any facilities used or supplied by a gas utility in the performance of the utility's duties under this subtitle to its patrons, employees, other gas utilities, and the public. The term also includes the interchange of facilities between two or more gas utilities.

*Id.* § 101.003(14).

"The statutory description of GURA as 'comprehensive' demonstrates the Legislature's intent that GURA encompass all or virtually all pertinent considerations involving gas utilities operating in Texas." *Tara Partners, Ltd. v.*

*CenterPoint Energy Res. Corp.*, 371 S.W.3d 441, 446 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

GURA places responsibility for regulating gas utilities with the Railroad Commission. *City of Port Neches v. R.R. Comm'n of Tex.*, 212 S.W.3d 565, 571 (Tex. App.—Austin 2006, no pet.). "The railroad commission has exclusive original jurisdiction over the rates and services of a gas utility." Tex. Util. Code Ann. § 102.001(a). The Railroad Commission must ensure that each rate a gas utility makes, demands, or receives is "just and reasonable." Tex. Util. Code Ann. § 104.003(a) (Vernon 2007). GURA sets forth the factors the Railroad Commission applies in determining a just and reasonable rate for a gas utility, which include invested capital, rates of depreciation, amortization or depletion, net income, tax benefits, certain expenses, and postemployment benefits. *See* Tex. Util. Code Ann. §§ 104.051–.059 (Vernon 2007 & Supp. 2017).

A gas utility must file schedules with the Railroad Commission "showing all rates that are: (1) subject to the regulatory authority's original or appellate jurisdiction; and (2) in effect for a gas utility service, product, or commodity offered by the gas utility." Tex. Util. Code Ann. § 102.151(a) (Vernon 2007). A gas utility may charge only rates set forth on schedules filed with each regulatory authority having original or appellate jurisdiction over those rates. *City of Dallas v. R.R. Comm'n of Tex.*, No. 03-06-00580-CV, 2008 WL 4823225, at *2 (Tex. App.—Dallas Nov. 6, 2008, no pet.) (mem. op.) (citing Tex. Util. Code Ann. §§ 102.151, 104.002, 104.005). "A rate may not be unreasonably preferential, prejudicial, or discriminatory but must be sufficient, equitable, and consistent in application to each class of consumer. In establishing a gas utility's rates, the railroad commission may

treat as a single class two or more municipalities that a gas utility serves if the commission considers that treatment to be appropriate." Tex. Util. Code Ann. § 104.003(a).

An "affected person" may bring a complaint concerning the reasonableness of the existing rate of a gas utility. Tex. Util. Code Ann. § 104.151 (Vernon 2007). An "affected person" includes "a person whose utility service or rates are affected by a proceeding before a regulatory authority." Tex. Util. Code Ann. § 101.003(1)(B).

We now examine the Gathering Issues that are being litigated in this suit against the backdrop of this regulatory scheme.

## II. GURA Does Not Deprive the Trial Court of Subject Matter Jurisdiction to Consider the Gathering Issues

Article V.A of the JOAs between BHP Billiton and EF pertains to the designation and responsibilities of the operator and provides in relevant part as follows:

> Operator shall conduct its activities under this agreement as a reasonable prudent operator, in a good and workmanlike manner, with due diligence and dispatch, in accordance with good oilfield practice, and in compliance with applicable law and regulation . . . .

Article V.D.1, which addresses the rights and duties of the operator regarding competitive rates and the use of affiliates, provides in relevant part as follows:

> All work performed or materials supplied by affiliates or related parties of Operator shall be performed or supplied at competitive rates, pursuant to written agreement, and in accordance with customs and standards prevailing in the industry.

9

EF contends that BHP Billiton breached these articles and failed to act as a reasonable and prudent operator when it chose an affiliate to provide gas gathering services at non-competitive rates. According to EF, the Gathering Issues turn on whether BHP Billiton selected a reasonable gathering plan with a competitive provider.

BHP Billiton asserts that EF's Gathering Issues focus on the reasonableness of Eagle Ford Gathering's rates and services. BHP Billiton posits that EF's claim for breach of the JOAs based on the Gathering Issues must be predicated on a determination about whether Eagle Ford Gathering's rates and services are just and reasonable. BHP Billiton argues that the Railroad Commission has exclusive jurisdiction to decide the reasonableness of Eagle Ford Gathering's rates and services under section 104.003 of GURA.

We reject BHP Billiton's contention. EF's contentions regarding Eagle Ford Gathering's rates arise in the context of a claim that BHP Billiton breached the JOAs by (1) failing to conduct its activities under the JOAs as a reasonable and prudent operator; and (2) hiring Eagle Ford Gathering to supply gathering services at non-competitive rates for the life of the wells. EF complains that BHP Billiton could have engaged other gathering companies doing business in the area, which charged less for providing the same service. EF's Gathering Issues do not implicate the Railroad Commission's exclusive jurisdiction under GURA because it is not necessary to decide whether the rate filed with and approved by the Commission is reasonable in determining whether BHP Billiton breached the JOAs by entering into life-of-the-well contracts with an affiliate charging rates higher than those charged by other gathering companies operating in the area.

10

BHP Billiton cannot change this conclusion by contending that EF seeks to frame its Gathering Issues as a private contract dispute to evade the Railroad Commission's jurisdiction. BHP Billiton misplaces its reliance on *Tara Partners* in making this contention. *See* 371 S.W.3d at 447–48.

Tara Partners contracted with a gas utility, CenterPoint, to purchase natural gas. Tara Partners sued CenterPoint for breach of contract because CenterPoint billed for more gas than Tara Partners actually consumed. *Id.* at 443. Tara Partners asked the trial court to correct CenterPoint's bills retroactively and award damages for the overpayment. *Id.* CenterPoint filed a plea to the jurisdiction arguing that the Texas Utilities Code conferred exclusive jurisdiction over claims regarding rate disputes and refunds for overcharges with the Railroad Commission or the municipality involved. *Id.*

Tara Partners contended that its suit was based on a private contract and, therefore, no administrative regulation of natural gas rates and services applied to its claim. *Id.* The court of appeals determined that Tara Partners' claim that CenterPoint incorrectly charged for natural gas fell within the statutory definitions of "rate" and "service," over which the municipality or Railroad Commission had exclusive original jurisdiction. *Id.* at 446 (citing Tex. Util. Code Ann. §§ 102.001, 103.001). Rejecting Tara Partners' argument that GURA did not apply to its claim for breach of a private contract, the court explained that the statutorily defined rate over which the municipality or Railroad Commission had exclusive original jurisdiction included a "contract affecting the compensation, tariff, charge, fare, toll, rental, or classification" charged by the gas utility. *Id.* at 447 (quoting Tex. Util. Code Ann. § 101.003(12)).

11

The reasoning of *Tara Partners* does not apply here because this case involves a dispute arising from contracts between two non-utilities. EF is not suing utility Eagle Ford Gathering. EF is suing non-utility BHP Billiton for breach of the JOAs. EF asserts that it is not seeking a gross reduction in Eagle Ford Gathering's rate as a gas utility. Instead, EF has asserted claims for breach of contract against BHP Billiton based on allegations that BHP Billiton violated the JOAs by failing to act as a reasonable and prudent operator when it contracted with Eagle Ford Gathering for the life of the wells at higher, non-competitive rates than those charged by other gathering companies in the area.

The district court has jurisdiction to entertain EF's claim that BHP Billiton breached the JOAs by failing to act as a reasonable and prudent operator when it contracted with Eagle Ford Gathering to pay gas gathering rates that were approved by regulators but nonetheless were not competitive in light of other rates available from other gas gathering companies in the area. This issue does not come within the exclusive jurisdiction of the Railroad Commission, and the trial court did not abuse its discretion by denying BHP Billiton's plea to the jurisdiction.

BHP Billiton has not shown that it is entitled to mandamus relief. Accordingly, we deny the petition for writ of mandamus. We also lift our stay entered on June 6, 2017.


/s/    William J. Boyce
        Justice

Panel consists of Justices Boyce, Donovan, and Jewell.