

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-21-00491-CV

**IN RE GHK ENTERPRISES, LP AND GLENN H. KOTHMAN**

Original Mandamus Proceeding[1]

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: April 27, 2022

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

In the underlying proceeding, real party in interest Eduardo Rincon asserts relators GHK Enterprises, LP ("GHK") and Glenn H. Kothman[2] fraudulently induced Rincon into entering an executory contract in 2014 for the purchase of a tract of land in the Patton Ranch Subdivision of Frio County, Texas. In this discovery dispute, relators seek relief from the trial court's order compelling production of all records associated with the entire Patton Ranch Subdivision for the calendar year 2019. We hold the trial court abused its discretion in compelling the production of all documents relating to the entire subdivision for the calendar year 2019 because the request is overbroad.

---

[1] This proceeding arises out of Cause No. 20-07-00185CVF, styled *GHK Enterprises, L.P. v. Eduardo Rincon*, pending in the 218th Judicial District Court, Frio County, Texas, the Honorable Lynn Ellison presiding.
[2] At times, Kothman is referred to as "Kothmann." For consistency, we use Kothman herein.

## BACKGROUND

On May 27, 2014, Rincon signed an agreement with GHK for the purchase of a five-acre tract of land in the Patton Ranch Subdivision of Frio County, Texas (the "property"). The contract expressly incorporated a set of restrictions and covenants set forth on an exhibit. The underlying dispute centers on the legality and enforceability of these restrictions and covenants. The purchase price for the property was $65,000. Rincon made an immediate down payment and financed the remaining balance of the down payment over six months. On November 25, 2014, after Rincon paid the down payment in full, he executed a promissory note, deed of trust, and related documents to finance the balance of the purchase price, and GHK executed and delivered a warranty deed with vendor's lien.

Beginning in October 2017 and continuing through January 2020, GHK sent Rincon a series of notices of defaults stating Rincon had failed to timely pay several monthly installments. The final notice, dated January 3, 2020, reflected a trustee's sale to occur on February 4, 2020.

On February 9, 2020, GHK sent Rincon a notice that stated GHK returned payment based on alleged violations of certain covenants and restrictions. The following day, GHK executed a Trustee's Deed reciting the property was sold at public auction on February 4, 2020 to Kothman. On March 17, 2020, GHK sent Rincon a notice that stated GHK returned payment because the property had been "reposse[sse]d."

Rincon allegedly refused to relinquish possession of the property, engaged counsel, and threatened suit against GHK. In response, on July 8, 2020, GHK filed its original petition against Rincon requesting declarations relating to the lawfulness and enforceability of restrictive covenants placed on Rincon's property and the propriety of GHK's foreclosure.

Governing the scope of discovery, Rincon's live pleading is his Third Amended Answer and Second Amended Counterclaim. By his answer and counterclaim, Rincon "seeks relief for

wrongful foreclosure, breach of contract, violations of Chapter 51 of the Texas Property Code, violations of Chapter 392 of the Texas Finance Code, and violations of the Texas Deceptive Trade Practices Act." The pleadings assert Kothman fraudulently induced Rincon "and others" to sign executory contracts "so [Kothman] can receive a steady stream of monthly income paying much higher returns than a regular insurance annuity." Generally, Rincon's fraud allegations are that GHK (1) refused to translate the terms of transaction documents (even though GHK allegedly knew Rincon could not read or write English) and (2) deliberately misled Rincon into executing the contract in 2014.

On September 11, 2020, Rincon served GHK with the written discovery at issue in this proceeding. Rincon requested the identification and production of "documents associated with each lot sold and financed by GHK at Patton Ranch, including Executory Contracts, Deeds of Trust, Trustee's Deeds, Special Warranty Deeds, and any other deed types" and "documents associated with each lot on which GHK attempted to or did foreclose at Patton Ranch, including Notices, Certified Mail proof of delivery, Reinstatement Agreements, filed Notice(s) of Appointment of Substitute Trustee, and any other documents filed and associated with each foreclosure" for each year from 2013 through 2020.

GHK timely objected to the written discovery as overbroad, seeking confidential information, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. GHK further objected, "The requested information relates to other land owners that are not involved in this dispute, and GHK's transactional documents associated with other landowners are not relevant to the issues in this lawsuit. Plaintiff further objects that the question calls for information that is private and confidential and could include sensitive financial data, tax data, and other information by and between GHK and other private parties that is protected by privacy laws." GHK also objected to the requests as creating an undue burden, which GHK later substantiated

with an uncontested and detailed affidavit that concludes compliance would require a minimum of 1,800 hours of time and cost a minimum of $27,000.

On December 18, 2020, Rincon moved to compel the production of these third party documents from the years 2013 through 2020. The motion argues (1) the requests are within the scope of discovery and (2) GHK waived its objections "because any valid objections are obscured by numerous unfounded objections."

After Rincon set his motion to compel for hearing, on September 8, 2021, GHK filed a detailed response to Rincon's motion to compel. On September 9, 2021, the trial court heard Rincon's motion to compel. At the hearing, the trial court allowed Rincon to choose one year of GHK's records for production, and Rincon chose 2019. On September 29, 2021, the trial court signed an order compelling the production of "the original records, papers, agreements, and executory contracts, including deed records, notary records, and foreclosure records associated with the Patton Ranch Subdivision" for 2019.

## MANDAMUS PROCEEDING

On November 5, 2021, GHK filed a petition for writ of mandamus requesting that we vacate the trial court's order. Four days later, GHK filed a motion for temporary relief seeking a stay of the order while this court considered the petition. On November 10, 2021, we requested Rincon to file a response to the petition and stayed the trial court's September 29, 2021 order pending final resolution of the petition.

On November 29, 2021, Rincon filed a response to the petition and an accompanying motion to dismiss the petition based on alleged hyper-technical violations of the Texas Rules of Appellate Procedure. On December 1, 2021, GHK filed a letter conceding there were typographical errors in its original filing and that it inadvertently admitted documents from the mandamus record. A few days later, GHK filed an amended petition and mandamus record

correcting the errors and omissions accompanied by a motion for leave to amend the petition and mandamus record. We grant GHK's motion for leave and deny Rincon's motion to dismiss.

## ANALYSIS

Trial courts have broad discretion to decide whether to permit or deny discovery. *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 247 (Tex. 2021) (per curiam) (citing *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 802 (Tex. 2017) (per curiam)). Generally, they abuse that discretion only if their decision is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* (quoting *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (per curiam)). To demonstrate an abuse of discretion, relators must either show (1) the trial court could have reached only one conclusion and that a contrary finding is thus arbitrary and unreasonable; or (2) the trial court erred in determining what the law is or applying the law to the facts, even when the law is unsettled. *Id.*

"A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy." *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (per curiam). Although our review broadly construes relevance, "even these liberal bounds have limits, and discovery requests must not be overbroad." *Id.* A request "is not overbroad merely because [it] may call for some information of doubtful relevance" so long as it is "reasonably tailored to include only matters relevant to the case." *Id.* (quoting *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (per curiam)). Whether a request for discovery is overbroad is distinct from whether it is burdensome or harassing. *Id.* (citing *In re Allstate Cnty. Mut. Ins. Co.*, 227 S.W.3d 667, 670 (Tex.2007) (per curiam)). Overbroad requests for irrelevant information are improper whether they are burdensome or not. *Id.*

In *National Lloyds*, the insured claimed that National Lloyds breached its insurance contract by underpaying her property damage claims after storms damaged her home in Cedar

Hills, Texas. *Id.* at 487–88. The insured sought the production of all claim files from three individual adjusters for the preceding six years and all claim files from two adjusting firms for the past year. *Id.* at 488. She sought "to compare National Lloyds' evaluation of the damage to her home with National Lloyds' evaluation of the damage to other homes to support her contention that her claims were undervalued." *Id.* at 489. The trial court ordered production of the files for claims handled by the two adjusting firms who handled her claims, but limited the scope of the claims to those involving properties in Cedar Hill that were damaged by the storms. *Id.* at 488.

The Texas Supreme Court granted mandamus relief, noting that it "fail[ed] to see how National Lloyds' overpayment, underpayment, or proper payment of the claims of unrelated third parties is probative of its conduct with respect to [the insured's] undervaluation claims at issue in this case." *Id.* at 489. The Supreme Court continued, "this is especially so given the many variables associated with a particular claim, such as when the claim was filed, the condition of the property at the time of filing (including the presence of any preexisting damage), and the type and extent of damage inflicted by the covered event." *Id.* In other words, "[s]couring claim files in hopes of finding similarly situated claimants whose claims were evaluated differently from" the insured in order to prove that National Lloyds breached the contract by underpaying her "[was] at best an 'impermissible fishing expedition.'" *Id.* (citation omitted). Thus, the Supreme Court held that the trial court abused its discretion in ordering the insurer "to produce evidence related to insurance claims other than the plaintiff's." *Id.* at 487. This court has applied *National Lloyds* to conclude a party's attempt to compare the information sought in discovery for the purpose of finding unrelated but similarly situated parties was overbroad. *See In re Allstate Ins. Co.*, 551 S.W.3d 798, 800–01 (Tex. App.—San Antonio 2018, orig. proceeding).

In *Dillard Dept. Stores v. Hall*, the plaintiff sued Dillard for false arrest. 909 S.W.2d 491, 491 (Tex. 1995) (per curiam). The trial court ordered Dillard to produce every claims file that

involved allegations of false arrest, civil rights violations, and excessive use of force. *Id.* at 492.

Plaintiff argued he wanted the documents to explore whether he could in good faith allege racial

discrimination. *Id.* But because the case was "a simple case of false arrest," the Texas Supreme

Court determined that the request was overbroad and "the very kind of 'fishing expedition' that is

not allowable." *Id.* Similarly, Rincon's counsel argued under Rule 13 of the Texas Rules of Civil

Procedure, "before I go making any allegations against Mr. Kothmann . . . I have the responsibility

as an officer of the Court and signing pleadings accusing him of a pattern of statutory fraud." With

respect to Rincon's fraud allegations, Rincon's pleadings assert fraudulent acts committed in 2014.

Third party records from five years after the alleged fraud are irrelevant to whether relators

defrauded Rincon in 2014. As in *Dillard*, "requests for document production may not be used to

simply explore" whether Rincon can allege a pattern of statutory fraud against Kothman. *See id.*

Moreover, Texas courts have regularly determined discovery requests may not be used to

compel the production of unrelated third party documents to show a party's routine, habit, or

practice of engaging in illegal conduct. For example, in *In re Nat'l Lloyds Ins. Co.*, the Texas

Supreme Court stated:

> Plaintiffs argue that the discovery order is not overbroad because the
> homeowners seek to recover punitive damages from National
> Lloyds for bad faith, fraud, and violations of the Insurance Code,
> and they are therefore entitled to show that National Lloyds had
> knowledge of its own misdeeds and a pattern and practice to defraud
> its insureds. This, however, does not entitle Plaintiffs to discover
> documents unrelated to the insurance event at issue. *In re Nat'l
> Lloyds*, 449 S.W.3d at 489–90. In *Texaco, Inc. v. Sanderson*, the
> plaintiffs wanted to prove a general "corporate strategy to ignore
> safety laws," where the principal issue was whether the defendants
> were grossly negligent in exposing the plaintiffs' decedents to
> asbestos, benzene, and other such toxic substances. 898 S.W.2d at
> 815. We explained that "[w]hile plaintiffs are entitled to discover
> evidence of defendants' safety policies and practices as they relate
> to the circumstances involved in their allegations, a request for all
> documents authored by [the corporate safety director] on the subject

of safety, without limitation as to time, place or subject matter, is overbroad." *Id.*

507 S.W.3d 219, 225 (Tex. 2016) (orig. proceeding) (per curiam).

We also cannot afford Rincon's surmise and suspicions any weight. *In re State Farm Lloyds*, 520 S.W.3d at 609 ("Hypothetical needs, surmise, and suspicion should be afforded no weight."). Rincon's request for all documents relating to third party transactions in an entire subdivision that were created approximately five years after Rincon closed on the property are otherwise patently overbroad. *See id.*; *see also, e.g.*, *In re Hanover Lloyds Ins. Co.*, No. 05-17-00608-CV, 2018 WL 1127436, at *3 (Tex. App.—Dallas Mar. 2, 2018, no pet.) ("Although there is a remote possibility the requested discovery could lead to the discovery of relevant evidence, we fail to see how Hanover's use of HAAG engineering reports on claims of unrelated third parties is probative of Hanover's conduct with respect to its handling of this claim.").

Documents created in 2019 also cannot lead to the discovery of admissible evidence relating to fraudulent inducement allegedly occurring in 2014. To establish fraud, a plaintiff must show that: (1) the defendant made a false, material representation; (2) the defendant "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;" (3) "the defendant intended to induce the plaintiff to act upon the representation;" and (4) the plaintiff justifiably relied on the representation, which caused the plaintiff injury. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019). "A representation is material if the representation was important to the plaintiff in making a decision, such that a reasonable person would be induced to act on and attach importance to the representation in making the decision." *Id.* Even assuming GHK's records reveal material misstatements of fact to third parties in 2019, as a matter of law, Rincon could not have relied on statements post-dating his transaction by five years. *See id.*; *see also Grant Thornton LLP v. Prospect High Income Fund*,

314 S.W.3d 913, 923 (Tex. 2010) ("In measuring justifiability, we must inquire whether, 'given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances *at or before the time of the alleged fraud*[,] it is extremely unlikely that there is actual reliance on the plaintiff's part.'") (emphasis added) (internal citations omitted) (alteration in original). As a result, the production of GHK's 2019 records cannot lead to the discovery of admissible evidence for an alleged fraudulent inducement occurring in 2014.

We conclude the trial court abused its discretion by compelling the production of documents that are plainly overbroad. We need not reach relator's undue burden and privacy objections. *See* TEX. R. APP. P. 47.1.

### CONCLUSION

For the reasons stated above, we conditionally grant the petition for writ of mandamus and direct the trial court to vacate its September 29, 2021 "Order on Rincon's Motion to Compel Inspection of Books and Records" no later than fifteen days from the date of this opinion. The writ of mandamus will issue only if the trial court fails to comply within fifteen days from the date of our opinion and order.

Lori I. Valenzuela, Justice